IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Patricia Groves, as Personal Representative of　）
the ESTATE OF DAVID LYNN GROVES,　）
　）
　　　　　Plaintiff,　）
　）
v.　）　　CASE NO. 9:13-CV-81037-WJZ
　）
EMERSON ELECTRIC CO., CAS　）
ENTERPRISES, INC., KREG ENTERPRISES,　）
INC., and KREG INTERNATIONAL, INC.,　）
　）
　　　　　Defendants　）

**PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

Pursuant to Florida Statutes §768.16 et seq., Plaintiff Patricia Groves, as Personal Representative of the ESTATE OF DAVID LYNN GROVES, hereby files the amended instant Complaint against Defendants EMERSON ELECTRIC CO., CAS ENTERPRISES, INC., KREG ENTERPRISES, INC., and KREG INTERNATIONAL, INC. and states as follows:

**JURISDICTION AND VENUE**

1.　This is an action that greatly exceeds this Court's minimum jurisdiction of $15,000.00.

2.　This is an action for the wrongful death of DAVID LYNN GROVES, deceased.

3.　All acts or omissions of negligence occurred in Palm Beach County, Florida. The Court has jurisdiction over Defendants because, at all relevant times, they designed, manufactured, sold, distributed, promoted and place into the stream of commerce in Florida numerous tools including the Ridgid table saw and Kreg True-Flex Featherboard at issue in this case. Defendants also conducted business in the State of Florida and the causes of action

asserted herein arose from and are connected to purposeful acts taken by Defendants in Florida. Defendants' contacts with Florida were continuous and systematic.

4. All conditions precedent to Plaintiff's right to recover the relief sought herein have occurred or have been performed.

## PARTIES

5. Plaintiff Patricia Groves is an individual residing in Palm Beach, Florida. She is the surviving spouse of Decedent DAVID LYNN GROVES and the duly appointed personal representative of Decedent's estate. Under Florida Statute §§ 768.20 and 768.21, Plaintiff brings this action on behalf of Decedent's Estate and Decedent's wrongful death beneficiaries, including, without limitation, Patricia Groves (Decedent's spouse). Plaintiff claims all damages for the estate and the survivors allowed by law, including, but not limited to, medical bills, funeral expenses, loss of net accumulations, mental pain and suffering of the survivors, loss of support and services of the Decedent, with interest, and loss of Decedent's companionship and protection.

6. Defendant Emerson Electric Co. is a Missouri corporation with its principal place of business in St. Louis, Missouri. Defendant may be served by delivering a copy of the summons and the complaint to its registered agent, Frank Steeves, or any other officer or director of Defendant, located at 8000 W. Florissant Avenue, St. Louis, MO 63136.

7. Defendant CAS Enterprises, Inc. is an Iowa corporation with its principal place of business located at 201 Campus Dr., Huxley, Iowa 50124. It may be served with process by serving its registered agent, Todd Sommerfeld, at 201 Campus Dr., Huxley, Iowa 50124.

8. Defendant Kreg Enterprises, Inc. is an Iowa corporation with its principal place of business located at 201 Campus Dr., Huxley, Iowa 50124. It may be served with process by serving its registered agent, Todd Sommerfeld, at 201 Campus Dr., Huxley, Iowa 50124.

9. Defendant Kreg International, Inc. is an Iowa corporation with its principal place of business located at 201 Campus Dr., Huxley, Iowa 50124. It may be served with process by serving its registered agent, Todd Sommerfeld, at 201 Campus Dr., Huxley, Iowa 50124.

## FACTS COMMON TO ALL COUNTS

10. This suit arises out of the severe personal injuries and resulting wrongful death suffered by DAVID LYNN GROVES on or about December 19, 2012 due to the wrongful conduct of Defendant Emerson Electric Co. ("Emerson") in designing, manufacturing, distributing and selling a Ridgid brand table saw (the "Ridgid Saw") and the wrongful conduct of Defendants CAS Enterprises, Inc., Kreg Enterprises, Inc. and Kreg International, Inc. (collectively the "Kreg Defendants") in designing, manufacturing, distributing and selling a Kreg brand True-FLEX Featherboard (the "Kreg Featherboard").

13. Emerson designed, manufactured, marketed and sold the Ridgid Saw at issue. In so doing, Emerson failed to utilize available safety technology in the Ridgid Saw. The Ridgid Saw, like all table saws sold in the United States, is required to be sold with a blade guard. However, the blade guard on the Ridgid Saw is extremely difficult to use and must be removed for a user to make certain cuts with the saw. Once removed, it is extremely difficult to reattach the blade guard. Thus, it is common practice for users of the Ridgid Saw to either assemble the saw without the guard or to remove the guard and leave it permanently off the machine while using the table saw. This widespread practice was well know by Emerson, yet they made no

effort to improve the design of the guard to make it more user friendly until required to do so by recent changes to industry-wide standards.

14. The Ridgid Saw also comes with a splitter or spreader attached to the guard that is designed to prevent kickbacks while cutting. A kickback is often the result of the saw blade being pinched by the wood as it is being cut. The back of the saw blade can cause the wood to jerk or kick back at high velocity into the user, causing the user's hands or fingers to be land on or be pulled into the spinning blade of the saw and leading to catastrophic and permanent injuries. Kickbacks are a common and well-recognized phenomenon of which Emerson had actual knowledge at the time the Ridgid Saw was designed, manufactured, distributed and sold. Emerson designed the splitter or spreader of the Ridgid Saw to be attached directly to the guard. When the guard is removed, as it often is, no kickback protection is provided to the user. Because it used such a splitter or spreader design, the Ridgid Saw was unreasonably dangerous as designed and manufactured.

15. Emerson has known for many years that kickbacks can be substantially reduced or eliminated by using a riving knife rather than a spreader or splitter. A riving knife is a small piece of metal that sits behind the blade and rises and falls with the blade. Even if the guard is removed, the riving knife remains in place, substantially reducing or eliminating kickbacks. Riving knifes have been used for decades in Europe and are required on all power tables saws sold in Europe. Recently, riving knifes have been included as necessary safety equipment pursuant to new industry-wide standards adopted in the United States. The Ridgid Saw used by Decedent did not have a riving knife. Had Emerson used this safer alternative design on the Ridgid Saw, Decedent would not have been injured or his injuries would have been substantially

reduced and his wrongful death would not have occurred. Because it lacked a riving knife, the Ridgid Saw was unreasonably dangerous as designed and manufactured.

16. The Kreg Defendants sold the Featherboard without adequate warnings and instructions. Specifically, they failed to warn that placement of the Featherboard toward the back of the spinning blade of a table saw could lead to kickback of the wood during normal and foreseeable use. This danger was not open or obvious. As a result of the inadequate warnings, the Featherboard was unreasonably dangerous as marketed and sold.

17. On or about December 19, 2012, while using the Ridgid Saw and the Kreg Featherboard in the reasonable, foreseeable and intended manner, Decedent suffered severe and fatal injuries when the piece of wood he was working on kicked back and impaled Decedent. According to Decedent's autopsy, his cause of death was an "impaling wound of the abdomen." At the time of his injury and wrongful death, Decedent was acting reasonably and was exercising all due care for his own safety.

## COUNT I

### STRICT PRODUCT LIABILITY AGAINST EMERSON

18. Plaintiff re-alleges Paragraphs 1 through 17 and incorporates them herein by reference.

19. Emerson is liable under the theory of product liability as set forth in §§ 402A and 402B of the Restatement of Torts 2d. Emerson at all times material hereto engaged in the business of designing, manufacturing, assembling, selling, marketing, and/or supplying the Ridgid Saw. The Ridgid Saw was in a defective condition at the time that it was designed, manufactured, sold, and/or marketed by Emerson and at the time it left their possession. The

Ridgid Saw reached Decedent without any substantial change in their condition and the Ridgid Saw was in the possession of Emerson at the time the defect occurred.

20. The condition of the Ridgid Saw made it unreasonably dangerous for its intended use. Decedent was a user of the Ridgid Saw and was unaware of the defect and used the Ridgid Saw in a reasonable, foreseeable and intended manner. The injury and wrongful death suffered by Decedent was the exact type of injury that can be caused by a defective table saw.

21. The Ridgid Saw failed to perform as safely as an ordinary consumer, such as Decedent, would expect when used in an intended or reasonably foreseeable manner. The benefits of the design of the Ridgid Saw do not outweigh the risk of danger inherent in such design. Moreover, Emerson could have provided a safer alternative design into the Ridgid Saw that included, among other things, a riving knife. Such a safer alternative design existed at the time the Ridgid Saw was manufactured, and it would not have substantially impaired the Ridgid Saw's utility. Such safer alternative design was economically and technologically feasible at the time the product left the control of Emerson by the application of existing or reasonably achievable scientific knowledge. The Ridgid Saw's defective design was a legal cause and proximate cause of Decedent's death and Plaintiff's injuries and damages.

22. For these reasons, Emerson is strictly liable under Florida product liability law without regard to proof of negligence or gross negligence.

## COUNT II

### NEGLIGENCE OF EMERSON

23. Plaintiff re-alleges the consistent allegations in Paragraphs 1 through 17 and incorporates them herein by reference.

24. Emerson had a duty to exercise reasonable care in the design, manufacture, marketing, testing, approval, application for approval, inspection, sale and distribution of the Ridgid Saw into the stream of commerce. Emerson failed to exercise ordinary care in the design, manufacture, marketing, testing, inspection, sale and/or distribution of the Ridgid Saw into interstate commerce and thus were negligent in all of these areas. As a result of the negligence of Emerson, the Ridgid Saw was unreasonably dangerous for its ordinary and foreseeable use at the time it left the possession of the Emerson.

25. Emerson's negligence was a proximate cause of Decedent's death and Plaintiff's injuries and damages.

## COUNT III

### STRICT PRODUCT LIABILITY AGAINST THE KREG DEFENDANTS

26. Plaintiff re-alleges Paragraphs 1 through 17 and incorporates them herein by reference.

27. The Kreg Defendants are liable under the theory of product liability as set forth in §§ 402A and 402B of the Restatement of Torts 2d. These Defendants at all times material hereto engaged in the business of designing, manufacturing, assembling, selling, marketing, distributing and/or supplying the Kreg Featherboard. The Kreg Featherboard was in a defective condition at the time that it was marketed, sold and distributed by the Kreg Defendants and at the time it left their possession. The Kreg Featherboard reached Decedent without any substantial change in their condition and the Kreg Featherboard was in the possession of the Kreg Defendants at the time the defect occurred.

28. The Kreg Defendants sold the Featherboard without adequate warnings and instructions. Specifically, they failed to warn that placement of the Featherboard toward the

back of the spinning blade of a table saw could lead to kickback of the wood during normal and foreseeable use. This danger was not open or obvious. As a result of the inadequate warnings, the Featherboard was unreasonably dangerous as marketed and sold.

29. The Kreg Featherboard as sold and marketed made it unreasonably dangerous for its intended use. Decedent was a user of the Kreg Featherboard and was unaware of the defect and used the Kreg Featherboard in a reasonable, foreseeable and intended manner at the time of injury and death. Specifically, Decedent was using the Kreg Featherboard to help secure the workpiece against the fence, and Decedent had placed the Kreg Featherboard toward the back of the spinning blade. Because of its placement, the Kreg Featherboard caused the wood that Decedent was working on to kick back and impale him. The injury and wrongful death suffered by Decedent was the exact type of injury that can be caused by a defective or unreasonably dangerous featherboard.

30. The Kreg Featherboard's marketing and warning defects were a legal cause and proximate cause of Decedent's death and Plaintiff's injuries and damages. For these reasons, the Kreg Defendants are strictly liable under Florida product liability law without regard to proof of negligence or gross negligence.

### COUNT IV

### NEGLIGENCE OF THE KREG DEFENDANTS

31. Plaintiff re-alleges the consistent allegations in Paragraphs 1 through 17 and 26 through 30 and incorporates them herein by reference.

32. The Kreg Defendants had a duty to exercise reasonable care in the marketing, sale and distribution of the Kreg Featherboard into the stream of commerce. The Kreg Defendants failed to exercise ordinary care in the marketing, sale and distribution of the Kreg Featherboard

into interstate commerce and thus were negligent in all of these areas. As a result of the negligence of the Kreg Defendants, the Kreg Featherboard was unreasonably dangerous for its ordinary and foreseeable use at the time it left the possession of the Kreg Defendants.

33. The Kreg Defendants' negligence was a proximate cause of Decedent's death and Plaintiff's injuries and damages.

## DAMAGES

34. The wrongful acts of Defendants set forth above were a legal cause of Decedent's death and Plaintiff's injuries and damages. Plaintiff seeks all damages for the estate and the survivors allowed by law, including, but not limited to, medical bills, funeral expenses, loss of net accumulations, mental pain and suffering of the survivors, loss of support and services of the Decedent, with interest, and loss of Decedent's companionship and protection.

35. All conditions precedent to Plaintiff's recovery under the foregoing claims have been performed, have occurred or have been excused.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer, that the Court set this case for jury trial, that judgment be entered against Defendants, jointly and severally, for the damages set forth herein as well as pre-judgment and post-judgment interest and costs of suit and that the Court grant Plaintiff such other and further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ John Chapman*
John Chapman, Esq.
FBN: 10314
**HEYGOOD, ORR & PEARSON**
2331 West Northwest Highway, 2nd Floor
Dallas, TX 75220
Telephone No.: (214) 237-9001
Facsimile No.:  (214) 237-9002

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on all counsel via the Court's ECF system on this the 31st day of October, 2013.

*/s/John Chapman*
John Chapman